In re Petition for Naturalization of
Sterie Dimitrov **TODOROV**.
No. 442536.

United States District Court
N. D. Illinois, E. D.
May 17, 1966.

---

**WILL, District Judge.**

Petitioner filed a petition for Naturalization on September 10, 1965 under Section 329(a) of the Immigration and Nationality Act of 1952 (8 U.S.C. § 1440 (a)) pursuant to the provisions of the Act of June 30, 1950 (P.L. 597, 81st Cong. 2d Sess.) entitled "An Act to Provide for the Enlistment of Aliens in the Regular Army," popularly known as the Lodge Act, as amended by Section 402 (e) of the Immigration and Nationality Act of 1952 (66 Stat. 276). Pursuant to the applicable provisions of the 1952 Act, the Naturalization Examiner submitted findings of fact and conclusions of law to this court. The Examiner concluded that the petitioner had established his eligibility for naturalization and recommended that the petition be granted.

Petitioner, a 35 year old native and national of Bulgaria, enlisted in the United States Army under the Lodge Act at Heidelberg, Germany on September 4, 1956 for a period of five years. Travelling under military orders, he entered the United States at the port of New York on September 26, 1956. After completing eight months of training at Fort Jackson, South Carolina and Fort Benning, Georgia, he was assigned to Fort Corby in the Panama Canal Zone. He served in an active duty status in the Canal Zone until March 4, 1959 when he returned to the United States for treatment of Buerger's disease. This disease resulted in severe lameness and rendered him 70% disabled according to Veterans Administration standards. On June 4, 1959 he was released from Walter Reed Hospital and placed on the Temporary Disability Retired List (TDRL). He remained on the TDRL until August 28, 1964, almost eight years after his original enlistment, when he was permanently retired and issued an honorable Certificate of Retirement from the Army.

The Lodge Act authorized the Secretary of the Army within specified time limits now expired, to accept enlistments or reenlistments of unmarried male aliens for a period of not less than five years. Section 4 of the Lodge Act provided that the provisions of Section 329 of the Immigration and Nationality Act, in so far as they provide a statutory basis for the naturalization of aliens who have served in the Armed Forces of the United States, are applicable to Lodge Act enlistees *who have completed five or more years of military service, if honorably discharged therefrom.*" (emphasis supplied) Section 4 further provided that Lodge Act enlistees who entered the United States pursuant to military orders and who, after five years of military service were honorably discharged, if otherwise qualified for citizenship should "be deemed to have been lawfully admitted to the United States for permanent residence within the meaning of such section 329(a)."

Three questions are raised by this petition; first, whether the standard of "military service" as stated in the Lodge Act is the applicable standard in cases of petitions for naturalization brought by Lodge Act enlistees or whether the "active-duty" standard contained in § 329 (a) of the Immigration and Nationality Act is to be applied; second, assuming application of the Lodge Act standard, whether a member of the armed forces on the Temporary Disability Retired List is in "military service," and finally, whether an honorable Certificate of Retirement from the armed forces is the equivalent of an honorable discharge.

This petition raises unusual questions solely because petitioner, while on active duty in the United States armed forces, was stricken with Buerger's disease. Had he remained on active duty for the five year period of his enlistment, we would not be making a determination of whether the Lodge Act standard, i. e., "military service" or the § 329(a) standard

of "active-duty status" is applicable, for the record is clear that, absent any physical disability, petitioner expected to complete his five years in an "active-duty status." Interestingly, however, while § 329(a) requires that aliens who served during World Wars I and II and the Korean War have served in an "active-duty status," no period of service is prescribed by that section. § 329(a) merely requires active-duty service plus separation "under honorable conditions." Thus if § 329(a) were the sole provision here involved, petitioner would qualify for naturalization on the basis of his active duty service from the date of enlistment, September 4, 1956 to the date he was placed on the TDRL, June 4, 1959, a period of almost three years.

■ Petitioner, however, is a Lodge Act enlistee, the important distinction between Lodge Act enlistees and those enlistees falling within the purview of § 329(a) being that the Lodge Act was passed to provide for the enlistment of aliens such as the petitioner who were not in the United States at the time of their enlistment, whereas § 329(a) is applicable only to aliens enlisting in the United States or other specified possessions or to aliens who, subsequent to their enlistment were lawfully admitted to the United States for permanent residence. As noted above, the Lodge Act resolved the residence question for members who enlisted under its provisions by providing that after completion of five years military service the Lodge Act enlistee is deemed to have been lawfully admitted for permanent residence. The instant petition, therefore, could only have been filed under the Lodge Act since Mr. Todorov enlisted in Germany.

Passage of the Lodge Act by Congress, with knowledge of the reasons for and the provisions of § 329(a), leads to the inference that Congress intended the Lodge Act to be substantively complete and independent in itself, incorporating by reference § 329(a) of the Immigration and Nationality Act only in so far as it is the operative section of the immigration laws providing for naturalization of aliens who served in the armed forces. The Lodge Act contains the applicable standards for naturalization of aliens who enlisted under *its* provisions. Combining the standards of both the Lodge Act and § 329(a) could not have been the intention of Congress. If Congress had meant the words "military service" in the Lodge Act to be analogous to service in an "active-duty status," it could have inserted that requirement specifically in the Act. By the inclusion of the term "military service" in place of the already existing term "active-duty status" in § 329(a), there is a strong inference that Congress intended the standard of the Lodge Act to be different from that of § 329(a). Moreover, this comports with the additional differences between the two provisions, e. g., the five year period of service requirement in the Lodge Act and the absence of any minimum period in § 329(a).

■ We conclude, therefore, that petitioner is eligible for naturalization if he has completed five years of military service and if he was honorably discharged therefrom.

The Secretary of Defense has issued the following policy statement regarding the TDRL:

"VII. *Policies*

\* \* \*

E. *Temporary Disability Retired List (TDRL)*

1. *Use of the Temporary Disability Retired List.* The TDRL shall be used in the nature of a 'pending list' for members unfit because of physical disability with conditions which may be permanently disabling and who meet the other requirements of Title 10 USC, Chapter 61, for disability retirement. *The TDRL provides a safeguard for the Government against permanently retiring a* member who subsequently fully recovers or nearly so, from the disability which caused him to be unfit because

of physical disability. Conversely the TDRL safeguards the member from being permanently retired with a condition which may reasonably be expected to develop into a more serious permanent disability. Therefore members whose disabilities have not stabilized to a degree where permanent disposition is warranted will be placed on the TDRL if otherwise qualified for retirement under the provisions of 10 U.S.Code, Chapter 61." (emphasis supplied)

Placement on the TDRL is clearly not discharge. Personnel placed on the TDRL continue to be members of the army, are subject, if they recover, to active duty assignment, and continue to enjoy certain military benefits until discharged or finally retired. Under these circumstances we hold that a member of the armed forces on the TDRL is in "military service."

To decide the remaining question we need only turn to petitioner's retirement certificate entitled "CERTIFICATE OF RETIREMENT." It reads that the petitioner "HAVING SERVED FAITHFULLY AND HONORABLY WAS RETIRED FROM THE UNITED STATES ARMY * * *." That petitioner was honorably discharged from the army is self-evident. To conclude otherwise would result in an unfair penalty to one who served honorably but who, while in service, had the misfortune of receiving disabling injuries. Indeed, the above reasoning applies to every aspect of this case. In neither the Lodge Act, the immigration laws, nor the army retirement provisions is there evidence which would warrant a restricted and unfair reading of these laws. We hold that petitioner has established his eligibility for naturalization under the provisions of the Lodge Act and Section 329 of the Immigration and Nationality Act. An appropriate order has been entered granting the petition.