In the Matter of the Petition for Naturalization of Vicente Escalona ESCALONA.
No. A17 848 730.

District Court of Guam.
Feb. 6, 1970.

DUENAS, District Judge.

## MEMORANDUM OF DECISION

Petitioner, Vicente Escalona Escalona, who was lawfully admitted to the United States for permanent residence on February 14, 1969, filed his petition for expeditious naturalization under section 329(a) of the Immigration and Nationality Act, as amended [8 U.S.C. § 1440 (a)].

This court has examined said petition in the above cause together with the findings of fact, conclusions of law and recommendation by the designated naturalization examiner and the petitioner's affidavit and certification of his military service attached thereto.

The statute (8 U.S.C. § 1440) concerning the requirements for naturalization of members of the United States armed forces during World War II is explicit. It provides, in part,—

"(a) Any person who, * * * has served honorably in an active-duty status in the *military*, air, or naval *forces of the United States* during * * * a period beginning September 1, 1939, and ending December 31, 1946, * * *, and who, if separated from such service, was separated under honorable conditions, may be naturalized as provided in this section if (1) at the time of enlistment or induction such person shall have been in the United States, or the Canal Zone, America Samoa, or Swains Island, whether or not he has been lawfully admitted to the United States for permanent residence, or (2) at any time subsequent to enlistment or induction such person shall have been lawfully admitted to the United States for permanent residence. *The executive department under which such person*

*served shall determine whether persons have served honorably in an active-duty status, and whether separation from such service was under honorable conditions: * * * "* (Emphasis supplied.)

Said statute further provides, in part,—

"(b) (4) *service in the military*, air, or naval *forces of the United States* shall be proved by a duly authenticated certification from the executive department under which the petitioner served * * * which shall state whether the petitioner served honorably in an active-duty status during * * * a period beginning September 1, 1939, and ending December 31, 1946, * * * and was separated from such service under honorable conditions; * * * *".* (Emphasis supplied.)

Further, 8 CFR Section 329.2 provides in part,—

"*Petition.* A person of the class described in section 329 * * * of the Act shall submit an application to file a petition for naturalization on Form N-400. *The certification required by section 329(b) (4) of the Act to prove service shall be requested by the applicant on Form N-426,* in triplicate, *and submitted to the* (Immigration and Naturalization) *Service* with Form N-400. * * * "* (Emphasis supplied.)

The petitioner testified in connection with the filing of his petition for naturalization that, having served in the Philippine Army Guerrilla Forces (Gold Area, FL, 6th Military District) from March 25, 1944 to June 26, 1945, he served in the Armed Forces of the United States.

Briefly summarizing a statement which the petitioner made in his affidavit dated April 8, 1968 in connection with his petition for naturalization: He was inducted as 1st LT by a Captain Mariano A. Tibay, Commanding Officer, Gold Area, FL, 6th Military District, and was assigned platoon leader of Company I.

He participated in intelligence, sabotage, patrolling, and training of men. In March 1945 he landed at Batangas mainland and participated in the operations of the 158th RCT and 11th Airborne Division, USA, in Bauen Areas. On June 26, 1945 the petitioner requested to be released from military duties for a civilian job. He has had no other military service.

The Guam office of the Immigration and Naturalization Service requested the United States Department of the Army, because the petitioner claimed service in the military and not in any other branches of service, to determine on Form N-426 from its official records whether or not the unit in which military service was rendered by the petitioner was in fact ordered into the service of the armed forces of the United States pursuant to the order of the President of the United States of July 26, 1941.

The United States Department of Army, as required by section 1440(b) (4), supra, certified that the petitioner had "no service as a member of the Philippine Commonwealth Army, including the recognized guerrillas, in the service of the United States Armed Forces."

Since the petitioner has had no military service other than during the period from September 1, 1939 to December 31, 1946, the foremost issue is whether the petitioner had served in the military service of the United States during the aforementioned period, so as to qualify for expeditious naturalization. Qualifying service in the military forces of the United States is the designated statutory prerequisite.

The solution to that issue is dependent upon the question of who or what agency is authorized by law to determine that a person such as the petitioner herein has had qualifying military service and in what manner it is accomplished. The Immigration and Nationality Act under which the petitioner seeks benefits of expeditious naturalization and Title 8 of the Code of Federal Regulations are explicit on these two points at hand.

As provided for in section 1440 (b) (4), supra, the determination of whether the petitioner did or did not have qualifying service is made by the executive department under which he served, if he did. And according to section 329.2 of Title 8 of the Code of Federal Regulations, the certification required by said section 1440(b) (4) of the Act to prove service "shall be * * on Form N-426," a form prescribed by the Attorney General pursuant to his statutory authority. [Sec. 103(a), Immigration and Nationality Act, 8 U.S.C. 1103(a)]. This form and all other forms so prescribed are given the force of regulations. [8 CFR 103.2(a)] These administrative regulations generally have the force and effect of law. [Jay v. Boyd, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1956); Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Bilbao-Bastido v. INS, 409 F.2d 820, 822 (9th Cir. 1969), cert. petition pending ("presumptively valid").]

*Qualifying service.* (a) *Philippine Scouts.* Section 37 of the Act of February 2, 1901 [31 Stat. 748, 758], authorized the President of the United States to enlist Filipino natives, to be organized as scouts, for service in the "Army" of the United States. It has been held that honorable service in such an organized unit, otherwise designated as the "Philippine Scouts", performed during World War II, that is, during the period from September 1, 1939 to December 31, 1946, constitutes service in the "military forces" of the United States for purposes of naturalization under section 1440, as amended, supra. [In re Naturalization of Garces (Ramos), D.C., 192 F.Supp. 439 (1961); also cf. Petition of Roble, D.C., 207 F.Supp. 384 (1962) and Miguel v. McCarl, 291 U.S. 442 (1934), at pages 452–453, 54 S.Ct. 465, 78 L.Ed. 901].

Since the petitioner did not serve in the Philippine Scouts, he is not eligible as such under the cited section 1440.

(b) *Other military forces of the Philippines.* Honorable service in the organized forces of the Government of the Commonwealth of the Philippines while those forces were in the service of the armed forces of the United States during World War II, pursuant to the military order of the President of the United States dated July 26, 1941, constitutes qualifying service in the "military forces" of the United States for purposes of naturalization under the cited section 1440. [Petition of Munoz, D.C., 156 F. Supp. 184 (1957); also cf. In re Carbezon's Petition, D.C., 210 F.Supp. 919 (1962), at page 920].

In his military order of July 26, 1941, Franklin D. Roosevelt, then the President of the United States, called and ordered into the service of the United States armed forces and placed under the command of a General Officer, United States Army, to be designated by the Secretary of War from time to time, all the organized military forces of the Government of the Commonwealth of the Philippines. The order was to take effect with relation to all units and personnel of the organized military forces of the government of the Commonwealth of the Philippines from and after the dates and hours, respectively, indicated in orders to be issued from time to time by the General Officer, United States Army.

On July 26, 1941, General Douglas MacArthur was designated the Commanding General of the United States Army Forces in the Far East. As stated in the case of Logronio v. United States, 133 F.Supp. 395, 132 Ct.Cl. 596 (1955), shortly after assuming command, General MacArthur formulated the general plan for the integration of all the armed forces in the Philippines. It envisioned a *progressive* incorporation of the reserve divisions of the Philippine Army into the service of the United States and comprehended *eventually* all elements of the Philippine Army. (Emphasis supplied.)

On October 28, 1944 President Osmena of the Philippines ordered all persons who were actively serving recognized military forces in the Philippines to be on active service in the Philippine Army and that a "recognized military force as used herein, is defined as a force under a commander who has been appointed, designated or recognized by the Commander in Chief Southwest Pacific Area." [Logronio v. United States, supra.]

■ Although the petitioner claims military service in the Philippine Army Guerrilla Forces from March 25, 1944 to June 26, 1945, the record does not establish that such guerrilla band was recognized as such under President Osmena's definition of the term "recognized military forces," and consequently was a unit of the organized forces of the Government of the Philippines pursuant to the military order of the President of the United States of July 26, 1941. The executive department, that is the Department of Army in this case, responsible under section 1440(b) (4) for making determinations as to whether petitioner's service in such unit was qualifying for naturalization purposes under section 1440(a) has determined that the petitioner has had no service as a member of the Philippine Commonwealth Army, including the recognized guerrillas, in the service of the United States Armed Forces. In other words the Philippine Army Guerrilla Forces in which the petitioner served during the crucial period was not a recognized unit of the United States Armed Forces and did not come within the purview of the order of July 26, 1941 of the President of the United States. That is conclusive.

The determination that military service in a certain unit comes within the President's Order of July 26, 1941 is made by and only by the responsible executive department. The language used in the law is quite plain and clear. The certification that an applicant has had qualifying military service must be obtained on Form N–426. The law provides for no substitution and waiver.

The record herein does not establish that the petitioner at this time is eligible for expeditious naturalization under

section 1440(a), or under any other statute.

It is therefore ordered that the petition be and it hereby is denied without any prejudice to his filing another petition for naturalization later when he becomes eligible under the general provisions of the law.